IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HOLIDAY HOSPITALITY )<br>FRANCHISING, LLC and SIX )<br>CONTINENTS HOTELS, INC. )<br>            )<br>    Plaintiffs, )<br>            )<br>v.          )<br>            )<br>PREMIER NW INVESTMENT )<br>HOTELS, L.L.C., and MICHAEL )<br>DEFREES, )<br>            )<br>    Defendants. ) | CIVIL ACTION FILE<br><br>NO. 1:12-cv-03608-RWS |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT
<u>AND PERMANENT INJUNCTION AGAINST DEFENDANTS</u>**

Plaintiffs Holiday Hospitality Franchising, LLC ("HHFL") and Six Continents Hotels, Inc. ("Six Continents") (collectively, "Plaintiffs") respectfully submit this reply brief in further support of their motion for entry of final judgment and permanent injunction against Defendants Premier NW Investment Hotels, L.L.C. ("Premier") and Michael DeFrees ("DeFrees") (collectively, "Defendants").

**INTRODUCTION**

Defendants' opposition brief (ECF No. 13) is an eleven-page diatribe against Plaintiffs that fails to provide the Court with a single excuse justifying Defendants'

failure to timely respond to Plaintiff's Complaint.  Instead, Defendants use their opposition brief as an opportunity to level numerous baseless accusations of supposed wrongdoing against Plaintiffs and their attorneys.  Apart from being completely false, Defendants' bald accusations of wrongdoing are nothing more than a sideshow intended to distract the Court from what is plainly evident upon reading Defendants' opposition brief:  Defendants cannot make the good cause showing necessary for the Court to set aside entry of default against Defendants.

Defendants have not offered a single reason as to why DeFrees failed to timely answer the Complaint.  Premier, on the other hand, relies on its filing of a bankruptcy petition as its primary excuse for why it did not timely answer the Complaint. A mere cursory review of the Bankruptcy Docket Sheet attached to Defendants' opposition brief, however, reveals that the bankruptcy proceeding Premier filed on January 11, 2013 (eleven days *after* Defendants' extended deadline for timely responding to Plaintiffs' Complaint) was dismissed by the bankruptcy court not on March 4, as Defendants mistakenly contend, but on February 8, two and a half weeks before Plaintiffs' request for entry of default.  Accordingly, under 11 U.S.C. § 362(c)(2), Plaintiffs' actions in this case in no way violated the automatic stay that resulted from Premier's January 11 bankruptcy filing.

-3-

Premier's purported "meritorious defenses" also fall woefully short of establishing good cause why this Court should set aside entry of default. First, Premier does not establish that its defenses are meritorious by a clear and definite recitation of facts, as this Circuit requires. And second, Premier does not (and cannot) dispute that Defendants: (1) failed to pay Plaintiffs amounts due and owing under the License Agreement (as that term is defined in the Complaint); and (2) failed to fully de-identify their hotel.

Finally, Premier contends repeatedly in the opposition brief that it has been "diligent." Opp'n Br. 1, 4, 9. But apart from noting that Defendants' attorney entered an appearance on March 13, 2013—almost two and a half months after Defendants' deadline for timely responding to Plaintiffs' Complaint—Premier offers no justification for that contention.

Because Defendants have not made the good cause showing necessary for the Court to set aside the entry of default, Plaintiffs' motion for default judgment and permanent injunction should be granted.

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

Premier first filed for Chapter 11 bankruptcy in connection with its ownership and operation of the Hotel (as that term is defined in the Complaint) on March 3, 2011. *In re Premier NW Investment Hotels, LLC*, No. 11-41620-BDL (Bankr. W.D. Wash.), ECF No. 1. That case was dismissed on December 8, 2011,

due to Premier's unauthorized use of cash collateral. *Id.*, ECF No. 65.

On October 16, 2012, Plaintiffs filed their Complaint in this action (ECF No. 1) based on Defendants' failure to de-identify the Hotel following termination of the License Agreement and failure to pay Plaintiffs amounts due and owing under that License Agreement.  With respect to Defendants' failure to de-identify, Plaintiffs specifically identified in their Complaint:  (1) the continuing presence of the three primary exterior "Holiday Inn Express" signs in which the word "Holiday" had simply been removed and replaced with the word "Gateway" in Plaintiffs' distinctive script, Compl. ¶¶ 17, 19, 42-46 & Exs. I-N; (2) Defendants' adoption and use of a URL that incorporates the acronym of Plaintiffs' HOLIDAY INN EXPRESS® mark:  <www.vancouverwa*hie*.com>, *id.* ¶ 47 & Exs. O, P; (3) the announcement on the "Home" page of Defendants' website that "The Holiday Inn Express is now the Gateway Inn Express," *id.* ¶ 48; and (4) Defendants' use of the HOLIDAY INN® Marks (as that term is defined in the Complaint) in connection with their online advertising activities, *id.* ¶ 49 & Ex. R.

The parties agreed to extend the time for Defendants to answer to December 31, 2012.  *See* Decl. of Michael W. Tyler ("Tyler Decl."), dated February 27, 2013, ¶ 6 (ECF No. 8-1).  On January 11, 2013, eleven days after Defendants' deadline to respond to Plaintiffs' Complaint, Premier filed a second bankruptcy petition.  *In re*

-4-

*Premier NW Investment Hotels, LLC*, No. 13-40188-BDL (Bankr. W.D. Wash.), ECF No. 1. Less than a month later, on February 8, 2013, the bankruptcy court dismissed Premier's second bankruptcy case upon determining that Premier had filed the bankruptcy in bad faith. *Id.*, ECF No. 76 at ¶ 76.

On February 27, 2013, two and a half weeks *after* the dismissal of Premier's second bankruptcy case, Plaintiffs filed a request for entry of default against Defendants (ECF No. 8), which the Clerk entered on February 28. On March 13, 2013, nearly two and a half months after Defendants' deadline for timely responding to Plaintiffs' Complaint, Defendants' attorney entered an appearance (ECF No. 10). Two weeks later, on March 29, 2013, Defendants filed an Answer (ECF No. 12), though they did so without first requesting leave from the Court.

## ARGUMENT

**A.     Defendants Bear the Burden of Establishing Good Cause to Set Aside the Entry of Default.**

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court may set aside an entry of default only for "good cause," which is a mutable standard "not susceptible to a precise formula . . . ." *Compania Interamericana, Export-Import, S.A. v. Compania Dominicana de Avidcion*, 88 F.3d 948, 951 (11th Cir. 1996). General guidelines courts commonly consider are:

> (1) whether the default was culpable or willful, (2) whether setting the entry of default aside would prejudice the adversary, (3) whether the

defaulting party presents a meritorious defense, (4) whether the public interest has been implicated, (5) whether the entry of default would cause significant financial loss to the defaulting party, and (6) whether the defaulting party acted promptly to correct the default.

*Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (citing *Compania Interamericana*, 88 F.3d at 951).

"The defendant bears the burden of establishing good cause to set aside an entry of default." *Insituform Techs., Inc.*, 588 F. Supp. 2d at 1352; *cf. African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999) ("Thus, a district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so."). And a defaulting party attempting to establish a meritorious defense must do so "by a clear and definite recitation of facts . . . ." *Gibbs v. Air Can.*, 810 F.2d 1529, 1538 (11th Cir. 1987) (citing *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969)).

Action on a motion to set aside entry of default is within the discretion of the district court. *Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984). "Hence a denial of the motion will not be set aside on appeal unless there was an abuse of discretion." *Id.*

### B. Premier's Bad Faith Bankruptcy Filing Is Irrelevant.

Under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), a debtor who files for Chapter 11 bankruptcy "enjoys an automatic stay against actions to

-6-

enforce, collect, assess or recover claims against the debtor or against property of the estate." *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006). Section 362(c)(2) provides that the automatic stay continues until the earliest of: "(A) the time the case is closed, (B) the time the case is dismissed, or (C) the time a discharge is granted." *Id.*; *see also United States v. Gumbaytay*, No. 2:08-cv-873-MEF, 2009 WL 605275, at *1 (M.D. Ala. Mar. 9, 2009) ("[S]ection 362(c) provides that an automatic stay expires when the bankruptcy court dismisses the bankruptcy petition.") (citation omitted).

Defendants contend that Premier's second bankruptcy action was dismissed on March 4, 2013, and that Plaintiffs' February 27, 2013 request for entry of default (ECF No. 8) (and the Clerk's February 28 entry of default) was in violation of the automatic stay and therefore unlawful. Opp'n Br. 3-4, 8-9. However, as clearly evident from the Bankruptcy Docket Sheet attached to Defendants' opposition brief, *id.* Ex. A, the second bankruptcy case was dismissed not on March 4, but on February 8, two and a half weeks before Plaintiffs requested entry of default.[1] The fact that the bankruptcy case was not *closed* for another month (i.e., March 4) is irrelevant for purposes of Section 362(c)(2). *See In re Hill*, 305 B.R. 100, 104 (Bankr. M.D. Fla. 2003) ("Although a case may remain open after

---

[1] It is also evident from the Bankruptcy Docket Sheet that the bankruptcy involved only Premier, and it therefore cannot be relied on to excuse DeFrees' default.

US2008 4360661.2

dismissal, the automatic stay of § 362 of the Bankruptcy Code terminates when the case is dismissed.").[2]

### C.     Premier Has Not Been Diligent.

Defendants repeatedly contend in their brief that Premier has been "diligent" (*see* Opp'n Br. 1, 4, 9), but the record demonstrates that it has been anything but.[3] Defendants were fully aware of Plaintiffs' Complaint and their December 31, 2012 deadline for filing a response, as Defendants' counsel negotiated an extension of that deadline with counsel for Plaintiffs. *See* Tyler Decl. ¶ 6. Defendants, however, waited almost three months after that deadline to file their Answer; and they failed to first request leave from the Court when they did so.

Apart from referencing a bad faith bankruptcy filing that is irrelevant to the instant motion, Defendants offer no excuse to justify their nearly three-month

---

[2] Because Premier filed its second bankruptcy in bad faith, it could not rely on the automatic stay even if Plaintiff had requested entry of default while the stay was in place. *See Albany Partners, Ltd. v. Westbrook*, 749 F.2d 670, 675 (11th Cir. 1984) (Section 362(d) of the Bankruptcy Code permits courts in some circumstances to grant retroactive relief from the automatic stay by annulling the stay *ab initio*); *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004) (retroactive annulment of the stay warranted where "the debtor acted in bad faith").

[3] Throughout their brief, Defendants overlook the fact that Plaintiffs have moved for default judgment as to both Premier *and* DeFrees, not just Premier. *See, e.g.,* Opp'n Br. 1 ("*Premier* has a large plurality of meritorious defenses" & "*Premier* has been diligent") (emphasis added); *id.* 4 (same); *id.* 8-9 ("*Premier* has been . . . candid with this Court, and . . . diligent with this Court.") (emphasis added). Indeed, Defendants do not offer the Court a single reason to explain DeFrees' failure to timely answer the Complaint.

delay in filing their Answer.  Because Defendants have failed to present sufficient evidence that they had good cause for not timely responding to Plaintiffs' Complaint, the Court should not set aside the entry of default.  *See Equal Opportunity Emp't Comm'n v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990) (to set aside default where defendant offered no "meaningful justification for engaging in the dilatory conduct which caused the default to be entered" would "encourage businesses to ignore 'petty' complaints when more 'pressing' matters command attention."); *Insituform Techs., Inc.*, 588 F. Supp. 2d at 1359 (Defendant "was aware of the lawsuit, was properly served by [Plaintiff], and therefore had an obligation to file a timely response with this Court."); *Craine v. Cent. Fla. Neurology, P.A.*, No. 6:07-cv-1615-Orl-28UAM, 2008 WL 2512637, at *1 (M.D. Fla. June 20, 2008) ("Absent a good reason from the defaulting party, the Court cannot set aside the entry of default.") (citation omitted).

**D.  Premier's Purported "Meritorious Defenses" Fall Woefully Short of Establishing Good Cause.**

A defaulting party must show a meritorious defense by "a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done . . . ." *Moldwood Corp.*, 410 F.2d at 352; *see also Gibbs*, 810 F.2d at 1538 (requiring a "clear and definite recitation of facts"). Defendants fail to meet this burden.

US2008 4360661.2

Defendants state in a conclusory manner that "there has been no deception of the purchasing public by Premier."[4]  Opp'n Br. 4.  But the only fact Defendants recite in support of this conclusion is the "disclaimer" on the "Home" page of their website announcing that "The Holiday Inn Express is now the Gateway Inn Express."  Opp'n Br. 4-5.[5]  First, this disclaimer constitutes a clear violation of Defendants' post-termination de-identification obligations.  *See* Compl., Ex. A at ¶ 12.E. (requiring that Defendants cease use of any of Plaintiffs' trademarks or service marks).  Second, Defendants' disclaimer is misleading, as it suggests not that Defendants' Hotel is no longer affiliated with Plaintiffs, but that Plaintiffs have renamed their HOLIDAY INN EXPRESS® hotels.  Third, even if Defendants' website disclaimer was not misleading, there is ample support that disclaimers in general are ineffective in curing customer confusion, and in some instances, can serve to aggravate confusion.  *See, e.g.*, *Australian Gold, Inc. v.*

---

[4] Again, Defendants' arguments are limited to Premier only; they make no showing regarding possible defenses with respect to DeFrees.

[5] Defendants also point to a press release posted on a "local website."  Opp'n Br. 5-6.  It is not clear from Defendants' brief (or from the press release) whether Defendants are responsible for the content of the press release.  If they are responsible, then the press release evidences further unauthorized use of the HOLIDAY INN® Marks by Defendants in their online advertising activities, and it would also constitute an additional violation of Defendants' post-termination de-identification obligations under the License Agreement.  If the press release was not generated by Defendants, it is completely deficient to establish that Defendants' infringing activities have not deceived the purchasing public.

US2008 4360661.2

*Hatfield*, 436 F.3d 1228, 1240 (10th Cir. 2006) (vague disclaimer on website does not dispel the likelihood of initial interest confusion); *Home Box Office, Inc. v. Showtime/Movie Channel, Inc.*, 832 F.2d 1311, 1315 (2d Cir. 1987) (recognizing "body of academic literature that questions the effectiveness of disclaimers in preventing consumer confusion as to the source of a product"); 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:51 (4th ed.) [hereinafter *McCarthy*] ("Consumer studies indicate that . . . in some instances, the use of a disclaimer can serve to aggravate, not alleviate, confusion over brands.").

Next, Defendants cite to Paragraph 46 of Plaintiffs' Complaint to support their claim that Plaintiffs "falsifie[d] facts with out-of-date evidence." Opp'n Br. 5, 6. This argument is nonsensical, as Paragraph 46 is crystal clear about when the evidence of de-identification referenced in that paragraph was collected. *See* Compl. ¶ 46. Moreover, despite their contentions that this evidence is "out-of-date," it is apparent from Defendants' brief that the exterior signs depicted in that evidence (showing "Gateway Inn Express" in Plaintiffs' distinctive script) have not been taken down. Opp'n Br. 6-7 (indicating that Defendants replaced "Holiday Inn" signs with "new signs" displaying the words "Gateway Inn Express").

Defendants then argue that Plaintiffs caused their own damage by opening another "Holiday Inn" five miles away from Defendants' Hotel. Opp'n Br. 8. This

-11-

allegation is so vague and lacking in specifics that Plaintiffs cannot adequately address it. Certainly, the paragraph from Plaintiffs' Complaint relied on by Defendants, Paragraph 68, does not constitute an admission that Premier had some sort of contractually-defined "territory," as Defendants contend,[6] that paragraph simply highlights that Defendants' infringing activities will make it more difficult for a new licensee to operate successfully an authorized HOLIDAY INN EXPRESS® hotel in the area previously served by Defendants. Compl. ¶ 68.

Defendants' collateral estoppel argument also is misplaced, as "[i]n this Circuit, a court hearing an infringement claim is not legally and conclusively bound by a prior decision of the [Trademark Trial and Appeal Board] regarding the same trademark dispute." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1180 (11th Cir. 1985). And the Board proceeding attached to Defendants' brief is not even the "same trademark dispute" at issue here, because the Board's analysis was limited to whether there was a likelihood of confusion as to the applied-for mark on the applied-for services, "regardless of actual usage." *McCarthy* § 32:98. In an infringement suit, however, "the context of use of the marks is relevant and may be crucial." *Id.*

---

[6] Indeed, Paragraph 2 of the License Agreement states that the license "does not limit Licensor's right or the rights of any parent, subsidiary or affiliate of Licensor, to use or license the System or any part thereof or to engage in or license any business activity at any other location." Compl., Ex. A at ¶ 2.

US2008 4360661.2

Here, two facts that are extremely important to the "context of use"—and facts not at issue in the Board's opposition proceeding—are that (1) Defendants are former HOLIDAY INN® licensees, and (2) Defendants' "Gateway Inn Express" exterior signs are in Plaintiffs' descriptive script. As former licensees, Defendants "owe[] a greater duty to distinguish and to differentiate than does a complete stranger . . . ." 3A Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks, and Monopolies*, § 21:85 (4th ed. 2008) (quoting *Dad's Root Beer Co. v. Atkin*, 90 F. Supp. 477, 484 (E.D. Pa. 1950)). Indeed, unlike a stranger to the licensor, which must avoid a *likelihood* of confusion with the licensor, a terminated licensee "is under a duty to . . . avoid *any possibility* of confusion" with the licensor. *Dad's Root Beer*, 90 F. Supp. at 484 (emphasis added); *see also Holiday Inns, Inc. v. Alberding*, 203 U.S.P.Q. 273, 275 (N.D. Tex. 1978) ("Defendants being a former licensee of Plaintiff have an affirmative duty to distinguish its services from those of Plaintiff to avoid all possible confusion."); *Corn Cabin Co. v. Givens*, 134 U.S.P.Q. 219, 221 (N.D. Ga. 1962) (defendant "owe[d] a greater duty to plaintiff to avoid confusion" than would a stranger).

Defendants' final argument is that the "HIE" in Defendants' URL (i.e., <www.vancouverwa*hie*.com>) has "no particular meaning." Opp'n Br. 11. In light of the fact that Defendants obtained this URL when they were operating a

-13-

HOLIDAY INN EXPRESS® hotel (*see* Compl. Ex. O), this argument is absurd. As noted above, Defendants have a greater duty to avoid confusion than would a complete stranger, and their continued use of the acronym "HIE" in their website URL falsely suggests a continued affiliation with Plaintiffs.[7]

## CONCLUSION

Defendants have failed to make the good cause showing necessary for the Court to set aside entry of default.  Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Entry of Final Judgment by Default and Permanent Injunction Against Defendants.

Respectfully submitted, April 18, 2013.


KILPATRICK TOWNSEND &
   STOCKTON LLP
Suite 2800
1100 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)
mtyler@kilpatricktownsend.com

 s/ Michel W. Tyler
Michael W. Tyler
Georgia Bar No. 721152
Robert E. Buckley
Georgia Bar No. 140280
James W. Faris
Georgia Bar No. 452293

Attorneys for Plaintiffs

---

[7] Notably, Defendants' opposition brief completely fails to address Defendants' use of Plaintiffs' HOLIDAY INN® Marks in their online advertising or their use of Plaintiffs' distinctive script as part of their primary exterior signs.

## **LOCAL RULE 7.1(D) CERTIFICATION**

Counsel for the Plaintiffs hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B).

s/ Michael W. Tyler
Michael W. Tyler

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2013, I electronically filed the foregoing REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT AND PERMANENT INJUNCTION AGAINST DEFENDANTS with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the following attorney of record:

Robert M. Ward, Esq.     rward@dilworthip.com

KILPATRICK TOWNSEND &
   STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)
mtyler@kilpatricktownsend.com

s/ Michael W. Tyler
Michael W. Tyler
Georgia Bar No. 721152

Counsel for Plaintiffs